UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JERRY WAYNE YOUNG,

    Petitioner,

    v.                             CAUSE NO. 3:20-CV-535-JD-MGG

WARDEN,

    Respondent.

## OPINION AND ORDER

Jerry Wayne Young, a prisoner without a lawyer, filed a habeas corpus petition to challenge his convictions for rape, criminal deviate conduct, and intimidation under Case No. 20D01-1504-FA-18. Following a jury trial, on November 12, 2015, the Elkhart Superior Court sentenced him as a habitual offender to ninety-three years of incarceration but later reduced his sentence to seventy-three years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> On October 16, 2012 at around 1:00 a.m., A.B. arrived home and went to sleep on her couch. At around 3:00 a.m., A.B. was awaken by someone knocking on her door. Assuming it was one of her friends, A.B. opened the door. Instead, it was Young, who pushed his way into her apartment. A.B. did not know Young but had seen him before walking near her apartment. Young, who was intoxicated, sat down on A.B.'s couch, and A.B. tried to convince him to leave to no avail. Young told A.B. he wanted

> to "play a sexual game." Despite A.B.'s refusal, Young said "We're going to do this," and forced A.B. to have sexual intercourse with him and to fellate him.
>
> On April 29, 2015, the State charged Young with Class A felony rape, Class A felony criminal deviate conduct, and Class D felony intimidation. The State also alleged that Young was a repeat sexual offender and a habitual criminal offender. After a jury trial, Young was found guilty as charged . . .

ECF 13-5 at 2-3; *Young v. State*, 57 N.E.3d 857, 858 (Ind. App. 2016).

In the petition, Young argues that he is entitled to habeas relief because appellate counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence on whether he used the threat of deadly force during the commission of the rape offense.

## STANDARDS OF REVIEW

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

[This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only

2

> the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir.

3

2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

The *Strickland* analysis also applies to claims of ineffective assistance of appellate counsel. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). As articulated by the Seventh Circuit:

> Effective advocacy does not require the appellate attorney to raise every non-frivolous issue under the sun, of course. After all, one of the principal functions of appellate counsel is winnowing the potential claims so that the court may focus on those with the best prospects. This is not to say that counsel's selection of the issues to pursue on appeal is beyond scrutiny.
>
> Were it legitimate to dismiss a claim of ineffective assistance of counsel on appeal solely because we found it improper to review appellate counsel's choice of issues, the right to effective assistance of counsel on appeal would be worthless. Instead, we engage in a pragmatic assessment of appellate counsel's work. Genuinely strategic decisions that were arguably appropriate at the time, but, with the benefit of hindsight, appear less than brilliant will not be second-guessed.
>
> But when appellate counsel omits without legitimate strategic purpose a significant and obvious issue, we will deem his performance deficient and when that omitted issue may have resulted in a reversal of the conviction, or an order for a new trial, we will deem the lack of effective assistance prejudicial.
>
> Thus when a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996).

4

DISCUSSION

In his sole claim, Young argues that he is entitled to habeas relief because appellate counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence on whether he used the threat of deadly force during the commission of the rape offense. Under Indiana law, appellate courts evaluate sufficiency of the evidence claims as follows:

> In reviewing the sufficiency of the evidence supporting a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. We do not reweigh the evidence or assess witness credibility. We consider conflicting evidence most favorably to the verdict. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Schaaf v. State*, 54 N.E.3d 1041, 1043 (Ind. App. 2016) (citing *Wilson v. State*, 39 N.E.3d 705, 716 (Ind. App. 2015)).

The prosecution charged Young with rape and criminal deviate conduct as a Class A felony, which required them to demonstrate that Young committed these offenses by using or threatening the use of deadly force. ECF 30-2 at 197. At trial, the victim testified as follows:

> **Prosecution:** At any point, did he threaten you?
>
> **Victim:** When I was crying, he said I needed to stop crying or he was going to give me a reason to cry but there wasn't anything else.
>
> * * *
>
> **Prosecution:** Isn't it true that you told the detective after that, if you did not stop crying, he would kill you?

5

**Victim:** Yes.

**Prosecution:** Is that true?

**Victim:** Yes.

**Prosecution:** When did he say that?

**Victim:** When he positioned me the first time, I started to cry a little bit, and he was like, "Don't cry. Don't cry. If you start crying, then it's going to be bad for you, so don't cry." And I just assumed that he was going to hurt me if I cried.

**Prosecution:** Did he actually say he was going to kill you?

**Victim:** No.

**Prosecution:** Isn't that what you told the detective?

**Victim:** Yes.

**Prosecution:** What exactly made you feel that that's where this was going?

**Victim:** When he got mad, he gave off this vibe like he was going to hurt me, and I've dealt with people hurting me before so I kind of picked up on the signs, and I just went with it so I wouldn't get hurt.

**Prosecution:** Can you describe specifically what you mean when you say he gave off this vibe? Besides the fact that he was on top of you trying to have sex with you.

**Victim:** When he was on top of me, he put his body weight on top of me so I couldn't move, and he gave off this like aggressiveness and anger and frustration cuz I wasn't doing what he wanted. So I just kind of was like, okay, if I ease my tension a little bit maybe it will just relax stuff.

* * *

**Prosecution:** I want to come back to what we were talking about earlier. A couple of days after this rape happened, you went and you spoke to an Elkhart police detective, correct?

**Victim:** Yes.

**Prosecution:** In fact, you've had the opportunity to watch your interview with that detective?

**Victim:** Yes.

**Prosecution:** And you understand your testimony has been different than what you told the police detective?

**Victim:** Yes.

**Prosecution:** Can you explain why that is?

**Victim:** Some parts of it I've forgotten and some parts of it I've just, I've just put out of my mind.

\* \* \*

**Prosecution:** Didn't you tell the detective that this man threatened to kill you if you didn't suck his dick?

**Victim:** Yes.

**Prosecution:** What is the truth?

**Victim:** The truth is that when he first said it, he was like, "Well, just do it," and I said no. He said, "If you don't do it -- just do it," and I said no. So we went back and forth for like 20 minutes for him to say, "Just do it," and I said no. Then he pushed my face down there, and he's like, "Do it," and I was like, "Fine," and I did it.

\* \* \*

**Prosecution:** What did you think was going to happen if you didn't suck this man's dick?

**Victim:** I thought he was going to hurt me.

**Prosecution:** What about what was going on made you believe that?

**Victim:** He kept getting rough with stuff and then he was just -- he's stronger than I am, and I wouldn't be able to defend myself if he did hurt

7

me so I was just like okay. Well, in my mind, I had it set that if I could get through this, I'd make it through this one way or the other. I just had to figure out how.

\* \* \*

**Prosecution:** Now, you had the opportunity to listen to your 911 call that you made from Andrew's house, correct?

**Victim:** Yes.

**Prosecution:** And you know that there are some discrepancies on the 911 call with what you testified today as well. Isn't that correct?

**Victim:** Yes.

**Prosecution:** Didn't you say on the 911 call that the defendant had a knife?

**Victim:** Yes.

**Prosecution:** Why did you say that?

**Victim:** I assumed it was a knife when he had his hand in his pocket, but I didn't actually see the knife.

\* \* \*

**Trial Counsel:** And then the prosecutor then impeached you about a knife. Can you tell me again what your testimony was regarding the knife?

**Victim:** I didn't see a knife. I assume that he had a knife or weapon with him when he said he was going to hurt me.

**Trial Counsel:** Why did you assume that?

**Victim:** How else would somebody hurt you if they didn't have a weapon? It just clicked. I just put them both together.

\* \* \*

**Prosecution:** And we've already clarified that he never openly threatened you?

8

> **Victim:** Yes.
>
> **Prosecution:** But you did just testify that he did say he would hurt you?
>
> **Victim:** Yes.
>
> **Prosecution:** Can you remind us at what point he said he would hurt you?
>
> **Victim:** Towards the very end of the first time going into positioning to the second time.

Trial Tr. 148-51, 160, 166, 168-69, 224, 241, 257.

The 911 call referenced by the victim during her testimony took place immediately after the rape occurred, and an audio recording of the call was admitted as evidence. Trial Ex. 101, 102. The interview with the detective referenced by the victim during her testimony occurred the day after the rape occurred. Trial Ex. A. During his testimony, the detective confirmed that the victim had told him that Young had threatened to kill her as he raped her, and a summary of that interview was admitted as evidence. *Id.*; Trial Tr. 600-04. The prosecution also presented the emergency room records in which the victim told medical staff that Young had threatened to kill her if she did not stop crying. Trial Ex. 28.

At the close of the prosecution's case, trial counsel moved for a directed verdict as follows:

> **Trial Counsel:** Judge, the victim testified that there was no threat made by the defendant upon her in my cross examination of her yesterday, neither at the time of vaginal sex or at the time of oral sex. For that reason, I moved for a directed verdict on [the charges of rape and criminal deviate conduct].
>
> **The Court:** Thank you. [Prosecution], on the motion, any response?

9

**Prosecution:** Judge, with respect to the vaginal sex, the victim testified that the defendant physically pushed his way into her apartment, physically pushed her down, that he did and said things that made her feel as though she was in imminent threat of deadly force. She testified repeatedly that his actions made her feel that he was going to kill her. She testified that she assumed that he had a knife and that he was going to hurt her. We have now heard from Detective Schroth that she believed that he had a weapon and didn't want to find out. She testified that midway through this that he said that if she didn't stop crying that he was going to hurt her and that because of that, she better suck his dick. Again, with respect to the oral sex, she testified that he grabbed her and forcefully made her do so. She testified by his actions, by his demeanor, by his attitude, and the way he was speaking and based on her life experience, she felt that she was compelled by deadly force or the imminent threat of deadly force.

**The Court:** Thank you.

**Prosecution:** And, if nothing else, Your Honor, it would be inappropriate for a full directed verdict on both counts based on the facts at issue.

**The Court:** [Trial counsel], additional comment?

**Trial Counsel:** Yes, Judge. The only time the victim alleged that the defendant threatened her was when she left her residence. He allegedly told her, "Get back in, or I will shoot you." That is the only threat and that goes towards the intimidation count. He may very well have made threats, but she testified that he did not threaten her. I said, "So, at the time of the vaginal intercourse, there was no threat?" She said, "Yes." I said, "At the time of the oral sex, there was no threat?" She said, "Correct, yes." I will agree with the prosecution that she testified on direct, but we've got conflicting testimony from the same witness.

**The Court:** Thank you. [Trial counsel], have a seat. [Trial counsel], the court agrees, in part, with the defense. We do have conflicting testimony. Yesterday, at approximately 10:30 in the morning, the victim testified during her cross-examination, "He did not threaten to kill me." That's what she said during the cross-examination. However, during the direct examination of the victim, in addition to . . . the 911 call, she clearly and unequivocally indicated that she was threatened and he threatened to kill me with regards to not only the rape but the criminal deviate conduct. This is enough evidence that this case goes to the jury on both counts.

> Accordingly, after review of the court's notes, which now make up three complete legal pads, under Trial Rule 50, the court will deny the request for a directed judgment on the evidence. The case will go to the jury.

Trial Tr. 610-13.

On direct appeal, appellate counsel did not challenge the sufficiency of the evidence but focused on the claim that the trial court erred by applying two sentencing enhancements to the rape conviction. ECF 13-3. The Indiana Court of Appeals agreed with appellate counsel's argument and ordered the trial court to attach one of the enhancements to the sentence for the criminal deviate conduct conviction, which ran concurrently with the rape conviction and so reduced Young's aggregate sentence by ten years. ECF 13-5.

At the post-conviction stage, the Indiana Court of Appeals rejected the argument that appellate counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence on direct appeal. ECF 13-12. The appellate court reasoned that appellate counsel did not perform deficiently because the record contained conflicting evidence on whether Young threatened to kill the victim and that, as a result, the sufficiency of the evidence argument amounted to an impermissible request for the appellate court to reweigh the evidence. *Id.*

After reviewing the record, the court cannot find that the State court's decision on this claim was unreasonable. The record contains substantial evidence that Young threatened to kill the victim during the commission of the rape. To Young's point, this evidence consisted solely of the victim's statements, which she contradicted during her testimony on cross-examination, but the contradictory testimony merely created a

11

question of fact for the jury rather than nullifying her unequivocal statements that Young threatened to kill her. Further, a jury could have reasonably decided to credit her statements to the emergency dispatcher, hospital staff, and the detective given their closeness in time to the relevant events and given the victim's testimony that she had forgotten and repressed portions of her memories of the incident during the three years between the date of the crime and trial.

The futility of the insufficiency of the evidence argument is further illustrated by the fact that Indiana courts effectively denied it on three separate occasions: at trial, when the Elkhart Superior Court denied the motion for a direct verdict; at the post-conviction stage, when the Elkhart Superior Court denied the ineffective assistance of appellate counsel claim in the order denying post-conviction relief; and at the post-conviction stage, when the Indiana Court of Appeals denied the appeal of the order denying post-conviction relief. Given the futility of this argument, the court cannot conclude that appellate counsel erred by failing to raise it. *See Linzy v. Faulk*, 602 Fed. Appx. 701, 703–04 (10th Cir. 2015) (no appellate counsel error for failure to raise a futile insufficiency of the evidence claim); *Rogers v. U.S.*, 596 Fed. Appx. 490, 493 (7th Cir. 2014) (same); *Green v. Stubblefield*, 16 Fed. Appx. 546, 547–48 (8th Cir. 2001) (same). And considering that appellate counsel prevailed on the only claim raised on direct appeal and reduced Young's aggregate sentence by ten years, the court cannot conclude that the "ignored issues are clearly stronger than those presented." *See Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996). Therefore, the ineffective assistance of appellate counsel claim is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Young to proceed further.

For these reasons, the court DENIES the habeas corpus petition (ECF 1); DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on November 8, 2021

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT